***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Defendant has accepted liability for plaintiff's injury by accident, which occurred on June 23, 2004, but disputes plaintiff's contention that she is entitled to disability benefits.
3. Defendant has not paid any disability compensation to plaintiff.
4. Plaintiff injured her left foot, left ankle and her right knee when she fell on June 23, 2004.
5. An employment relationship existed between plaintiff and defendant-employer, which is wholly owned by The May Company at all times relevant to this claim.
6. At all times relevant to plaintiff's injury by accident, Leadville Insurance Company, now d/b/a Federated Claims Services has administered the claim on defendant-employer's behalf.
7. Drs. Ehlert, DeWitt and Buchheit, authorized treating physicians gave plaintiff work restrictions.
8. Plaintiff was taken out of work from June 23, 2004 through June 25, 2004 as a result of her compensable injury. The last date plaintiff worked for the defendant-employer was November 4, 2005.
9. In October 2005, Dr. Thomas Buchheit gave plaintiff further work restrictions that she be allowed to stand or sit as needed and be limited to 20 hours of work per week.
10. Plaintiff's average weekly wage at the time of her injury was $328.68, which yields a compensation rate of $219.23.
11. Plaintiff was terminated from employment on or about November 22, 2005.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits: *Page 3 
 • Exhibit 1: Executed Pre-Trial Agreement; and
 • Exhibit 2: Plaintiff's medical records, Industrial Commission forms and personnel records.
The following documents were accepted into evidence as plaintiff's exhibits:
 • Exhibit 1: February 2005 performance appraisal for plaintiff;
 • Exhibit 2: November 9, 2005 letter from Chadwick G. Bowles to plaintiff;
 • Exhibit 3: November 22, 2005 letter from Mr. Bowles to plaintiff;
 • Exhibit 4: Summary of plaintiff's job search; and
 • Exhibit 5: Photographs of various places in defendant-employer's store.
The following documents were accepted into evidence as defendants' exhibits:
 • Exhibit 1: Summary of plaintiff's absences and defendant-employer's attempts to contact her;
 • Exhibit 2: Defendant-employer's employee handbook;
 • Exhibit 3: Mr. Bowles' notes of his November 18, 2005 telephone conversation with plaintiff; and
 • Exhibit 4: Lawanda Kenan's notes of her November 8, 2005 telephone conversation with plaintiff.
Transcripts of depositions of the following were also received post-hearing:
 • Dr. Thomas Buchheit (with plaintiff's Exhibits 1 2).
 *********** ISSUES
1. Whether the position defendant-employer provided plaintiff on and after October 15, 2005 constituted suitable employment and whether plaintiff was justified in refusing it? *Page 4 
2. Whether plaintiff's job abandonment in November 2005 constituted a constructive refusal of suitable employment?
3. Whether plaintiff is entitled to temporary partial disability compensation for the period from October 12, 2005 through November 4, 2005?
4. Whether plaintiff is entitled to temporary total disability compensation for any period beginning November 5, 2005?
5. Whether plaintiff is entitled to ongoing medical compensation and whether her current symptoms are related to her compensable injuries?
6. Whether defendants should be sanctioned under N.C. Gen. Stat. § 97-88.1 or otherwise for their failure to pay indemnity compensation or to provide medical treatment recommended by plaintiff's authorized treating physician?
7. Whether the rehabilitation professional retained by defendants should be removed from this case?
 *********** EVIDENTIARY RULING
While this matter was before the Deputy Commissioner, plaintiff filed a Motion to remove David Stewart as medical and vocational case manager on the grounds that Mr. Stewart violated the Rules for Rehabilitation Professionals. The Full Commission affirms the Deputy Commissioner's decision to deny plaintiff's Motion and finds that David Stewart is qualified in all respects to continue to work as plaintiff's case manager.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 5 
1. Plaintiff is 47 years old and a high school graduate who has also taken some courses at a community college. Before working with defendant-employer, plaintiff had worked as a secretary, in property management and as a building inspector.
2. At the hearing before the Deputy Commissioner, plaintiff testified that she was a retail sales associate with defendant-employer. Her job duties included: (1) sales, which required her to greet customers and assist them; (2) taking care of damaged merchandise; (3) ticketing merchandise; (4) making her area conform to floor plans; (5) orientation of new employees; (6) picking up clothing from dressing rooms every half hour; (7) unpacking merchandise from boxes; and (8) retrieving items from the stockroom, which entailed the use of a ladder. As plaintiff testified, the majority of her job duties required her to stand and walk and she was not able to perform her sales associate job successfully without being on her feet.
3. On June 23, 2004, while at work, plaintiff caught her foot in an expansion joint and fell down on her left foot. After sustaining her admittedly compensable injury, plaintiff went to the emergency room at Rex Hospital in Raleigh and was given a note taking her out of work entirely during the period June 23, 2004 through June 25, 2004.
4. The emergency room provider referred plaintiff to Dr. Kurt Ehlert, an orthopedist. Dr. Ehlert diagnosed plaintiff with a left ankle sprain, fracture of the fifth toe on her left foot and a contusion to her right knee. Dr. Ehlert assigned plaintiff sedentary job restrictions and placed her in a 3D boot.
5. Plaintiff returned to work with defendant-employer and was given a chair to sit in at work, which plaintiff testified she used when she could. Plaintiff's job duties did not change. *Page 6 
6. Plaintiff continued treatment with Dr. Ehlert through December of 2004. Dr. Ehlert kept plaintiff on light duty restrictions, with the recommendation she be allowed to sit for 15 minutes every hour.
7. In November 2004, an MRI revealed that plaintiff had a complete tear of the anterior talofibular ligament and possible partial tear of the posterior calcaneal fibular ligament in her left ankle.
8. Dr. Ehlert released plaintiff from work for one day on December 15, 2004, due to problems with her ankle and on December 23, 2004, Dr. Ehlert wrote a note for plaintiff allowing her to leave work early if she felt it necessary until she could be evaluated by Dr. Sarah E. DeWitt, an orthopedic surgeon with a specialty in foot and ankle surgery.
9. Upon Dr. Ehlert's referral, plaintiff presented to Dr. Sarah DeWitt on December 30, 2004 and January 28, 2005. Dr. DeWitt obtained a bone scan of plaintiff's left ankle and diagnosed left lateral ankle sprain with persistent pain, which Dr. DeWitt related to her compensable injury. Dr. DeWitt referred plaintiff to a pain clinic and released her to work four hours without restrictions and sedentary work for four hours per day.
10. In February 2005, plaintiff presented to Dr. Buchheit, a board-certified anesthesiologist with a specialty in pain management at Rex Pain Management Center. Dr. Buchheit had previously served as director of the pain management training program at Duke and was co-director of Duke's pain and palliative care unit. Dr. Buchheit diagnosed plaintiff with Complex Regional Pain Syndrome/Reflex Sympathetic Dystrophy (CRPS/RSD) of the left lower extremity. Dr. Buchheit prescribed new medications to treat the nerve pain that plaintiff was experiencing and he recommended that she continue pool therapy, which Dr. DeWitt had previously recommended. *Page 7 
11. Over the next ten months of treatment, Dr. Buchheit narrowed his diagnosis of plaintiff's condition to CRPS Type II without sympathetically mediated pain, and he provided recommendations for the treatment of plaintiff's condition. One of Dr. Buchheit's recommendations was that plaintiff receive anodyne therapy, which is an infrared photo energy treatment used to increase local circulation to nerves and tissues and to reduce neuropathic pain. Defendant-employer did not provide this therapy.
12. Regarding the anodyne therapy, Dr. Buchheit testified that it was not FDA-approved for the treatment of CRPS, but that many treatments that specialists recommend are not FDA-approved for the conditions for which they are prescribed.
13. On October 12, 2005, Dr. Buchheit restricted plaintiff's work to no more than 20 hours per week and recommended that she be allowed to intermittently stand or sit as needed.
14. On October 15, 2005, in an effort to accommodate plaintiff's restrictions, defendant-employer gave plaintiff a job assignment in "express checkout." In this position, plaintiff's job duties included: (1) tending the register and checking people out; (2) bagging customers' purchases; (3) removing sensors from clothes; (4) walking to help customers in her vicinity; (5) taking care of damaged merchandise, which entailed walking to the back of the store to retrieve clothing; (6) sorting and boxing damaged goods; (7) standing at a folding table while folding clothes; (8) taking wall mannequins down and dressing the mannequins; and (9) hanging clothes on racks as necessary. Again, plaintiff was provided with a chair to sit in at the checkout station, but she could not reach the register or the sensor remover while seated in the chair. Plaintiff testified that she was not able to sit as needed, but rather could only sit when she had a chance in the course of performing her job duties. Although defendant-employer told plaintiff *Page 8 
that she could call for assistance if she needed it, plaintiff also testified that defendant-employer had insufficient employees so it was unlikely that she would receive assistance when needed.
15. Mr. Chadwick Garrett Bowles, a merchandise team manager for defendant-employer, who had previously been the Human Resource Manager, testified that he interpreted Dr. Buchheit's October 12, 2005 letter as meaning that as long as defendant-employer provided plaintiff with a chair, it was accommodating her restrictions. Mr. Bowles further testified that it depends on the situation as to whether plaintiff's responsibilities could have been performed while sitting down.
16. Dr. Buchheit opined that he did not believe that the express checkout position, as described in Finding of Fact No. 13 above was suitable employment for plaintiff considering her work restriction that she be allowed to sit as needed.
17. The Full Commission finds that although defendants attempted to accommodate plaintiff's work restrictions, the position defendant-employer provided to plaintiff on and after October 15, 2005 was not suitable employment in that it did not comply with Dr. Buchheit's October 12, 2005 work restrictions allowing plaintiff to sit as needed.
18. After trying to work the "express checkout" position from October 15, 2005 through November 4, 2005, plaintiff testified that she was in pain and "everything was just too much" for her and she stopped showing up for work. Although she worked less than 20 hours per week during this period, defendants did not pay her temporary partial disability for the period. Defendants conceded in their Contentions that they owe plaintiff $381.07 in temporary partial disability compensation for this period.
19. Plaintiff failed to report for work or call her supervisor on November 5, 2005, November 7, 2005, November 8, 2005 and November 9, 2005. As a consequence, defendant-employer *Page 9 
terminated plaintiff's employment for job abandonment effective November 22, 2005, according to the policy set forth in defendant-employer's handbook.
20. Defendants contend that plaintiff abandoned her job by failing to call in for missed shifts. Defendants also contend that plaintiff's job abandonment was related to an incident in which she was allegedly the victim of an attempted rape while she was hitchhiking after her car was disabled and not her injury by accident.
21. The Full Commission finds that although plaintiff should have notified defendant-employer as to the reason for her absence, the work defendants provided for her as of October 15, 2005 was not suitable employment within the medical restrictions prescribed by Dr. Buchheit and as such, plaintiff was justified in not returning to her position.
22. As of the hearing before the Deputy Commissioner, plaintiff remained under Dr. Buchheit's December 15, 2005 restrictions for sedentary work for no more than 20 hours per week.
23. During the course of his treatment of plaintiff and before October 12, 2005, Dr. Buchheit had also diagnosed plaintiff with profound depression. As Dr. Buchheit testified to a reasonable degree of medical certainty, plaintiff's depression is related to her compensable left ankle injury. Dr. Buchheit opined that plaintiff's depression developed before she lost her job with defendant-employer and was related to the pain and loss of function caused by her compensable left ankle condition.
24. On January 3, 2006, Dr. Buchheit wrote to defendants that plaintiff needed psychiatric treatment for her depression, which he related to plaintiff's compensable injury. Dr. Buchheit specifically recommended Dr. Stephen Prakken as a psychiatrist who specializes in *Page 10 
pain management. His letter followed a phone call that Dr. Buchheit had made to defendants. Nonetheless, defendants did not authorize treatment with Dr. Prakken.
25. At the hearing before the Deputy Commissioner, plaintiff made a motion to compel defendants' authorization of treatment with Dr. Prakken, which defendants did not oppose. The Deputy Commissioner entered an Order shortly thereafter directing defendants to authorize treatment with Dr. Prakken.
26. On May 19, 2006, Dr. Buchheit wrote that there was nothing further he could do for plaintiff and again recommended combined psychological evaluation, therapy and management of plaintiff's pain and depression through Dr. Stephen Prakken, a pain psychiatrist.
27. Plaintiff testified that she has engaged in an extensive job search since her termination by defendant-employer, mostly seeking clerical and secretarial jobs, but has not received any offers. Plaintiff had applied for over 30 jobs before the hearing before the Deputy Commissioner and had posted her resume with online services. Plaintiff has also requested that defendant-employer provide her with a physically suitable job.
28. The Full Commission finds that plaintiff has made reasonable efforts to locate suitable employment within her work restrictions since she was terminated from employment with defendant-employer but has been unsuccessful.
29. The Full Commission finds that Dr. Buchheit's care for plaintiff was repeatedly delayed or denied by defendants, including referrals to the pain clinic, anodyne therapy and psychiatric care. This frustrated Dr. Buchheit and affected the care he was able to provide plaintiff. Dr. Buchheit wrote letters to defendants and even called defendants directly, which he testified he had never done before, because he felt so strongly about plaintiff's need to see Dr. Prakken. *Page 11 
30. The Full Commission finds that defendants have unjustifiably delayed and refused to approve appropriate medical care prescribed by Dr. Buchheit.
31. The Full Commission finds that the treatment that Drs. Ehlert, DeWitt and Buchheit have rendered for plaintiff's compensable left lower extremity condition has been reasonably required to effect a cure, provide relief and/or lessen the period of disability, including the anodyne therapy that Dr. Buchheit recommended. Further medical treatment for plaintiff's compensable left lower extremity condition and depression with Drs. Prakken and Buchheit is reasonably required to effect a cure, provide relief and/or lessen the period of disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 23, 2004, plaintiff sustained an injury by accident to her left foot, left ankle and right knee arising out of and in the course of employment with defendant-employer when her foot caught in an expansion joint causing her to fall. N.C. Gen. Stat. § 97-2(6).
2. As a direct result of her compensable injury by accident on June 23, 2004, plaintiff developed Complex Regional Pain Syndrome (CRPS) of the left lower extremity and depression. N.C. Gen. Stat. § 97-2(6).
3. As a result of plaintiff's compensable injury and resulting conditions, plaintiff is entitled to compensation for temporary total disability at the rate of $219.23 per week for June 23, 2004 through June 25, 2004, December 15, 2004 and from November 5, 2005 continuing until further Order of the Industrial Commission. N.C. Gen. Stat. §97-29. *Page 12 
4. As a result of plaintiff's compensable injury and resulting conditions, plaintiff is entitled to temporary partial disability compensation at a rate of two-thirds of the difference between plaintiff's pre-injury average weekly wage of $328.68 and her post-injury average weekly wage for the period of October 15, 2005 through November 4, 2005. N.C. Gen. Stat. § 97-30.
5. Although defendant-employer appears to have been justified in terminating plaintiff for her failure to notify defendant-employer that she would not be at work for the four days in November 2005, defendants' reliance on Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472, S.E.2d 397 (1996) is misplaced since the employment that defendant-employer offered plaintiff on and after October 15, 2005, which she was attempting to perform was not suitable employment according to the medical restrictions that Dr. Buchheit had assigned to plaintiff. While plaintiff should have called her supervisor to notify him that she would not be at work, plaintiff's failure to do so does not constitute an unjustified refusal of suitable employment that would preclude plaintiff from receiving temporary total disability compensation. N.C. Gen. Stat. § 97-32.
6. Assuming arguendo the applicability of the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that her inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability.Seagraves v. Austin Co. of Greensboro, supra. In this case, plaintiff has met her burden to show that she has ongoing total disability per the second prong of the Russell test. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 13 
7. Under Russell, an employee may meet her burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes,supra. When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra. Defendants have failed to carry this burden.
8. As a result of her compensable injury by accident and resulting conditions, plaintiff is entitled to have defendants pay for all medical treatment, including that provided by Drs. Ehlert, DeWitt, Buchheit and Prakken as well as treatment for her CRPS and depression with Drs. Prakken and Buchheit, which tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19),97-25.
9. The Industrial Commission may assess the whole cost of the proceedings including reasonable attorney's fees upon a party who has brought or defended a claim without reasonable ground. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 14 
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability benefits to plaintiff for the injury to her left foot, left ankle, right knee, CRPS and depression in the amount of $219.23 per week beginning on June 23, 2004 through June 25, 2004, for December 15, 2004 and from November 5, 2005 continuing until further Order of the Commission. Compensation due that has accrued shall be paid in a lump sum also subject to the attorney's fee.
2. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary partial disability compensation at a rate of two-thirds of the difference between plaintiff's pre-injury average weekly wage of $328.68 and her post-injury average weekly wage for the period of October 15, 2005 through November 4, 2005.
3. Plaintiff is entitled to all reasonably necessary medical treatment related to her injury by accident and resulting conditions of CRPS and depression, including diagnostic testing, surgery, prescriptions, referrals and the anodyne therapy as well as the treatment provided by Drs. Ehlert, DeWitt, Buchheit and Prakken for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability. Drs. Prakken and Buchheit are authorized as plaintiff's treating physicians.
4. Plaintiff's counsel is entitled to a reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded under Paragraphs 1 and 2 of this Award. From the lump sum payment owed to plaintiff, defendants shall deduct one-fourth of the total amount and forward this directly to plaintiff's counsel. Thereafter, defendants shall forward every fourth compensation check directly to plaintiff's counsel. *Page 15 
5. Pursuant to N.C. Gen. Stat. § 97-88.1, defendants shall pay an additional attorney's fee directly to plaintiff's counsel in the amount of $1,000.00. This amount is in addition to and not deducted from the benefits due plaintiff.
6. David Stewart shall remain as plaintiff's case manager.
7. Defendants shall pay the costs.
This the __ day of June 2007.
S/______________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ BUCK LATTIMORE CHAIRMAN
 S/______________________ DIANNE C. SELLERS COMMISSIONER

 *Page 1